IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIO REYNOSO,

     Petitioner,

v.                                                                              No. 2:24-cv-00759 KG/DLM
                                                                                No. 2:19-cr-00137 KG

UNITED STATES OF AMERICA,

     Respondent.


MEMORANDUM OPINION AND ORDER

     This matter comes before the Court upon Mario Reynoso's Motion Under 28 U.S.C.

Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Doc.

1; Cr. Doc. 147) (Motion).[1]  Petitioner is a federal prisoner and proceeding *pro se.*  He asks the

Court to vacate his conviction based on several ineffective assistance of counsel claims.   The

United States filed a response, (Doc. 5), and Mr. Reynoso filed a Reply, (Doc. 6).   Having

reviewed the record and the relevant law, the Court will dismiss the Motion and deny a

certificate of appealability.

I.     Procedural Background

     Mr. Reynoso was charged in a single count Indictment and Superseding Indictment with

"unlawfully, knowingly and intentionally distribut[ing] a controlled substance, 5 grams and more

of methamphetamine . . . [i]n violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)."   (Cr. Docs. 3

and 48).   On July 9, 2019, following a jury trial, a guilty verdict was returned.   (Cr. Doc. 95).

The verdict included the determination that Mr. Reynoso committed the distribution offense

---

[1] Citations to (Doc. __) are to documents filed in the Civil Case No. 2:24-cv-759, and citations to (Cr. Doc. __) are to documents filed in the Criminal Case No. 2:19-cr-137.

"after having been convicted of a serious drug felony for which the defendant served more than 12 months imprisonment" and was released from that "term of imprisonment for the serious drug felony within 15 years of May 8, 2018, the date of the [underlying] offense, as charged in the Superseding Indictment."   (Cr. Doc. 97).   On September 1, 2020, Mr. Reynoso was sentenced to a total term of 280 months' imprisonment and 10 years of supervised release.   (Cr. Doc. 116) (Judgment).

On September 11, 2020, Mr. Reynoso filed a notice of appeal challenging his conviction and sentence.   Cr. Doc. 117.   On June 29, 2021, the Tenth Circuit Court of Appeals affirmed the Judgment, and the mandate was issued on July 21, 2021.   *See United States v. Reynoso*, 861 F. App'x 204, 210 (10th Cir. 2021).   Mr. Reynoso filed an untimely petition for writ of certiorari on April 18, 2022, which the United States Supreme Court denied on June 6, 2022. (Cr. Docs. 129 and 130).   The Supreme Court subsequently denied his petition for rehearing. (Cr. Doc. 131).

On September 13, 2022, Mr. Reynoso filed a motion for the appointment of counsel to assist him in filing a second petition for writ of certiorari (Cr. Doc. 132), which this Court denied (Cr. Doc. 133).   Mr. Reynoso appealed the denial, requesting the Tenth Circuit to recall its mandate and vacate its judgment, arguing his counsel failed to advise him of his right to petition for a writ of certiorari and the deadline for filing such a petition.   *See United States v. Reynoso*, No. 22-2119, 2023 WL 3017136, at *1 (10th Cir. 2023), *cert. dismissed*, 144 S. Ct. 52, 216 L. Ed. 2d 1306 (2023).   The Tenth Circuit affirmed the denial of his motion to appoint counsel, but directed him to "file a motion in his previous criminal proceeding (No. 20-2130), requesting the [same] relief."   *Id.*   Mr. Reynoso followed the instructions, and, on July 18, 2023, the Tenth

Circuit reissued an Order and Judgment affirming his conviction.  *See United States v. Reynoso*, No. 20-2130, 2023 WL 4586142 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 411, 217 L. Ed. 2d 221 (2023).   The mandate was issued on August 9, 2023.   (Cr. Doc. 144).

On July 26, 2024, Mr. Reynoso timely filed the instant Motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.   (Doc. 1; Cr. Doc. 147).   He asserts he was "denied effective assistance of counsel at all stages of the proceedings" by his counsel's failure to contest: (1) the Government's "illegal investigation," (2) this Court's jurisdiction, (3) the Government's "tactics" to show his participation in the offense; (4) the Government's alleged use of false statements regarding eyewitness testimony related to his identity and attempt to prosecute him under another name, (5) chain of custody issues with the confiscated methamphetamine, (6) the categorization of "shoplifting" as "robbery" in his Presentence Investigation Report (PSR), (7) the government's warrantless search of his phone in violation of the Wiretap Act, and (8) his alleged exclusion from a pretrial conference where critical issues concerning his trial were allegedly addressed.

II.    Factual Background

The following facts, which give rise to Mr. Reynoso's criminal case, are taken from the Tenth Circuit's second affirmance of his conviction and sentence.  *See Reynoso*, 2023 WL 4586142, at *1.

A confidential source informed federal agents that someone named "Mario" was selling methamphetamine in the area around Las Cruces, New Mexico and El Paso, Texas.   The source did not know Mario's last name but provided the agents with Mario's phone number and a photograph of the license plate from Mario's gray 2011 Ford Fusion.   Agents determined that

the vehicle and the phone number were both registered to defendant, Mario Reynoso, at the same address.   From a photo line-up including Mr. Reynoso's driver's license photograph, the confidential source identified Mr. Reynoso as the person he knew as "Mario."

Working undercover, Agent Omar Lujan began calling and texting the phone number registered to Mr. Reynoso, communicating with a person identifying himself as "Mario."   Mario agreed to sell Agent Lujan two ounces of methamphetamine for $800, and they arranged to meet at a casino named Sunland Park on May 8, 2018.   On that day, Agent Lujan was provided with a picture of Mr. Reynoso.   He exchanged additional text messages and phone calls with Mario to coordinate the meeting.

At the agreed location, Agent Lujan saw a gray Ford Fusion with the same license plate registered to Mr. Reynoso.   He approached the driver's door and spoke to the driver through the rolled-down window.   At that point, Agent Lujan identified the driver as Mr. Reynoso based on the photograph he had been provided.   At the driver's direction, Agent Lujan got into the Ford Fusion and sat in the middle of the back seat.   The driver turned to face Agent Lujan, who asked about the methamphetamine.   The driver pointed to a Band-Aid box on the center console.   Agent Lujan pulled from that box a plastic bag containing what appeared to be two ounces of methamphetamine.   Agent Lujan gave the driver $800.   The driver said he needed to leave and told Agent Lujan to call him later.

That same day, Agent Lujan called the phone number registered to Mr. Reynoso and spoke to Mario.   Agent Lujan indicated the bag of methamphetamine was less than two ounces, and Mario agreed he owed Agent Lujan another gram.   Agent Lujan contacted Mario again in June 2018 to set up a second drug buy, but no further transaction occurred.   Mr. Reynoso was

later charged in a superseding indictment with distributing five grams or more of methamphetamine on May 8, 2018.   Mr. Reynoso does not dispute that the methamphetamine sold to Agent Lujan on May 8 amounted to five grams or more.

III.   Discussion

A petition under Section 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).   Relief is available where "the sentence was imposed in violation of the Constitution or laws of the United States," including the Sixth Amendment right to effective counsel.   28 U.S.C. § 2255(a).   *See also U.S. v. Tucker*, 745 F.3d 1054, 1066 (10th Cir. 2014) ("Sixth Amendment claims asserting ineffective assistance of counsel can and generally must be brought in a habeas action for post-conviction relief under 28 U.S.C. § 2255.").

A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   First, the petitioner must show "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   *Id.* at 688.   In other words, the representation must fall below an objective standard of reasonableness based on prevailing professional norms.   *Id.* at 687-88.   The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably."   *Welch v. Workman*, 639 F.3d at 980, 1012 (10th Cir. 2011) (quotations omitted).   The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."   *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting

5

*Harrington v. Richter*, 562 U.S. 86, 105 (2011)); *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) ("There is a strong presumption that counsel's performance falls within the wide range of professional assistance, the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.") (citations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense. *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir. 2001) (citing *Strickland*, 466 U.S. at 693-693). The movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A.  *Ineffective Assistance of Counsel*

1. *Failure to Challenge the Government's "Illegal Investigation" and "Tactics"*

Mr. Reynoso contends his counsel ineffectively failed to challenge the Government's "illegal investigation" and use of unlawful "tactics to make the patent appearance of [his] participation in the charged offense." (Doc. 1) at 1.

The instant Petition does not provide a legal argument or a factual basis for how the Government allegedly engaged in an unlawful investigation or improperly presented evidence during his jury trial. He mentions "he was personally involved with a federal prosecutor from the District of New Mexico via Facebook, and that they were meeting for drinks in the Western District of Texas, . . . but he later discovered [it] was one of the court reporters." (Doc. 1) at 2. He does not explain how the alleged communications on Facebook or the meeting with a court reporter relates to his ineffective assistance of counsel claim, how such communications would

6

qualify as part of an "illegal investigation," and he does not assert that his attorney was aware of those interactions.   Without such details, the Court cannot find ineffective assistance of counsel.

Conclusory allegations simply do not suffice to establish constitutionally deficient performance.   *See Hatch v. Oklahoma*, 58 F.3d 1447, 1459, 1471-72 (10th Cir. 1995) (allegations of ineffective assistance must be specific and particularized; conclusory allegations are insufficient and do not warrant an evidentiary hearing); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (The court is not required to "fashion [d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.").   The movant bears a "heavy" burden when claiming ineffective assistance of counsel, and to meet this burden, his "allegations must be specific and particularized, not general or conclusory."   *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000).   Consequently, Mr. Reynoso has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance of counsel under *Strickland*.

### 2. *Failure to Challenge the District Court's Jurisdiction*

Mr. Reynoso claims he received ineffective assistance of counsel because he was "prosecuted outside of the jurisdiction in which the conductive elements undergirding the indictment's charge(s) occurred."   (Doc. 1) at 1.   He does not expound on what jurisdictional defect allegedly existed that would make his counsel ineffective for failing to challenge the adjudication of his criminal case in the District of New Mexico.

On review of the record, there appears to be no jurisdictional deficiency within the Superseding Indictment which charged Mr. Reynoso with a federal offense that occurred in Doña Ana County in the District of New Mexico.   (Cr. Doc. 47).   The district courts of the United

States have original jurisdiction over all offenses against the laws of the United States.   U.S. Const. Art. III; 18 U.S.C. § 3231.   The charge against Mr. Reynoso, distribution of five grams or more of methamphetamine, is a federal offense arising under the laws of the United States.   *See* 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

Further, "[i]t is well settled that a district court has personal jurisdiction over any party who appears before it, regardless of how his appearance was obtained."   *United States v. Nissen*, No. CR 19-0077 JB, 2020 WL 1929526, at *21 (D.N.M. Apr. 21, 2020) (citing *United States v. Lussier*, 929 F.2d 25, 27 (1st Cir. 1991)).   Mr. Reynoso appeared before the District of New Mexico, participated in the proceedings, and did not object to the Court's jurisdiction over him or his case at any point prior to trial.   Mr. Reynoso does not argue in his instant Motion that he expressed any concern with personal or subject matter jurisdiction directly to his attorney. Testimony from the trial indicates that the distribution occurred in Sunland Park, located in Doña Ana County, which is within the District of New Mexico.   (Cr. Doc. 125) at 10, 27, 39.   Mr. Reynoso provides no factual basis to show that his counsel would have had reason to believe the Court did not have jurisdiction, and the record itself does not evidence any jurisdictional deficiencies.   Consequently, Mr. Reynoso has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance of counsel under *Strickland*.

### 3. *Failure to Challenge the Government's Evidence of His Identity*

Mr. Reynoso asserts his counsel was ineffective for failing to challenge the Government's use of "materially untruthful statements regarding eyewitness accounts of movant, where such identification was impossible."   (Doc. 1) at 1.   He argues the undercover agent "could not have identified movant as having been the person delivering the methamphetamine"

8

because "visibility in the car was impossible to ascertain who was in the vehicle." *Id.* at 2.   He

claims that the undercover agent actually met an individual named Mario Hernandez as they

have a similar appearance.   He explains that "from the earliest days of childhood, movant was

called 'Wilo,'" so anyone claiming that they were dealing with "Mario" could not have been

referring to him.   He also highlights that after his arrest, federal agents "drove him into the

District of New Mexico to prosecute him under the name 'Mario Hernandez'" and the

prosecution subsequently "constructed an unsubstantiated and fabricated connection of movant

to the name." *Id.*

Similar to the other claims in the instant Motion, Mr. Reynoso does not provide a factual

basis for his assertion that the Government presented false testimony during his trial, which his

counsel should have challenged.   Other than contesting the undercover agent's positive

identification of Mr. Reynoso, he does not name any other "eyewitness accounts" that were

"materially untruthful," nor does he describe the content of the alleged statements that his

attorney should have challenged.   Again, conclusory allegations simply do not suffice to

establish constitutionally deficient performance.   *See Hatch*, 58 F.3d at 1459, 1471-72.

As to the specific issue of the undercover agent's identification of Mr. Reynoso on the

day they met to exchange methamphetamine for $800, the Tenth Circuit Court of Appeals

determined, in pertinent part:

> Focusing, as Mr. Reynoso does, on the issue of his identity as the driver of the
> gray Ford Fusion involved in the May 8 drug sale, we hold that the evidence was
> sufficient to support the jury's verdict.   Agent Lujan testified that he positively
> identified Mr. Reynoso as the person who sold him drugs on that date.   Although
> Mr. Reynoso argues Agent Lujan may have been mistaken or the jury might not
> have credited his testimony, we do not weigh conflicting evidence or evaluate
> witness credibility, *see United States v. Khan*, 989 F.3d 806, 827 (10th Cir. 2021)
> ("We accept at face value the jury's credibility determinations and its balancing of

9

conflicting evidence." (internal quotation marks omitted)).

*Reynoso*, 2023 WL 4586142, at *5.

The Tenth Circuit also acknowledged the following facts underlying the charged offense: (1) the phone number the undercover agent texted and called to arrange the sale of methamphetamine was registered to Mr. Reynoso; (2) the individual who answered the texts and calls identified himself as "Mario;" which is Mr. Reynoso's legal first name; (3) the vehicle present during the sale was registered to Mr. Reynoso; and (4) the undercover agent recognized Mr. Reynoso from a photograph he reviewed prior to the meeting.   *Id.* at *1.

Although Mr. Reynoso expresses concern that the prosecution confused him with an individual named "Mario Hernandez," the record reflects that Mr. Mario Reynoso was the individual identified by the agent, charged in the indictment and superseding indictment, convicted, and sentenced.   During the trial, testimony was offered explaining that any use of the name "Mario Hernandez" by the federal agents early in the investigation was an inadvertent mistake when labeling the bag containing methamphetamine, and they quickly corrected the error.   (Doc. 124) at 107-08, 125-27 (Trial Transcript I); (Doc. 125) at 21-22 (Trial Transcript II).

Thus, any argument presented by Mr. Reynoso's trial counsel that the Government improperly prosecuted him for a crime committed by another individual would have been meritless.   *See United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) ("If [an] omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance."); *Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990) (citing *Strickland*, 466 U.S. at 69) (explaining it is not ineffective assistance of counsel to fail to make meritless

10

arguments); *see also Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)) (counsel not ineffective for failing to raise frivolous claims or investigate non-meritorious claims and defenses).   Even if the Court were to assume his counsel's performance was somehow deficient, the Tenth Circuit's recitation of the underlying facts and its' determination regarding the identification issue reflects that he would have been unsuccessful on the merits and the outcome of his case would not have been different.

To the extent Mr. Reynoso wants to relitigate the misidentification issue as to the undercover federal agent he met with on the date that gave rise to his arrest, he may not do so. Absent an intervening change in the law of a circuit, which is not the case here, issues disposed of on direct appeal generally will not be considered on a collateral attack in a § 2255 motion. *Richardson v. United States*, 2011 WL 13190111, at *4 (D.N.M. Dec. 15, 2011), *report and recommendation adopted*, No. CR 06-706, 2012 WL 12969857 (D.N.M. Apr. 24, 2012) (citing *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989)).   The Tenth Circuit has already addressed and disposed of Mr. Reynoso's misidentification argument on its merits on direct appeal.   *See United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (refusing to consider issues under § 2255 that we "previously considered and disposed of . . . on direct appeal"); *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255."); *United States v. Wade*, 342 Fed. Appx. 375, 377, 2009 WL 2502080 (10th Cir. Aug. 18, 2009) (unpublished) ("The district court was correct to reject this claim, *inter alia*, because we had previously rebuffed it on direct appeal.") (citations

omitted); *United States v. Varela-Ortiz*, 189 Fed. App'x 828, 830, 2006 WL 2076811 (10th Cir. July 27, 2006) (unpublished) ("Because we already disposed of this issue on direct appeal, [petitioner] may not raise it again in a § 2255 petition.") (citations omitted).

Consequently, Mr. Reynoso has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance of counsel under *Strickland*.

### 4. *Failure to Challenge the Chain of Custody*

Mr. Reynoso contends "the government law enforcement officers violated chain of custody evidentiary procedural rules when it produced methamphetamine that had not been properly logged and was accompanied with no proof of having been associated with any interaction with the movant." (Doc. 1) at 2. The Court assumes he charges his attorney with ineffective assistance of counsel for failing to seek suppression of or object to the methamphetamine as evidence based on the alleged chain of custody issue.

This claim fails because, as the Government admits to the Tenth Circuit on direct appeal, "[t]he methamphetamine seized on August 22, 2018, and its laboratory analysis were *not admitted* into evidence due to an issue with the chain of custody." Brief for Respondent, *U.S. v. Reynoso*, No. 20-2130, 2021 WL 1085442, at *6 (10th Cir. Mar. 18, 2021) (emphasis added). While Mr. Reynoso argues his counsel failed to challenge the chain of custody, the trial record indicates otherwise. The Government affirmatively stated: "Defense Counsel has pointed out that we are unable to establish a perfect chain of custody, that's correct[.]" (Doc. 125) at 96 (Trial Transcript II). Thus, counsel was not ineffective as he did, in fact, challenge the chain of custody of the seized methamphetamine and it ultimately was not admitted into evidence. These facts demonstrate that counsel's performance was not legally deficient.

12

5. *Failure to Challenge the Criminal History Section of his PSR*

Mr. Reynoso asserts his counsel was ineffective "for failing to challenge the inclusion - as felony criminal history - of a 'robbery charge' where the actual conduct was shoplifting, and thus not comported with any federal equivalent justifying the 2 point addition to the Presentence Report's Criminal History score." (Doc. 1) at 2.

Contrary to this argument, it is clear from the record that Mr. Reynoso's attorney did argue that the facts underlying his aggravated robbery conviction warranted a downward variance. (Doc. 106) at 5-6. On February 19, 2020, Mr. Reynoso, through his counsel, filed "Objections to the Presentence Investigation Report and Sentencing Memorandum and Request for a Downward Variance." *Id.* Within the Motion, his trial counsel explained the circumstances surrounding his robbery conviction:

> The PSR asserts Mr. Reynoso is a career offender based, in part, on his robbery conviction from El Paso. As a career offender his guidelines range is 360 months to life in prison. That guideline range shocks the conscience.
>
> Paragraph 34 of the PSR correctly points out the Defendant's robbery conviction is a result of his attempt to steal $84.00 worth of meat/steak from Albertsons. He grabbed the meat and tried to drive away. Apparently when he tried to escape in [h]is car he put store staff in fear of harm.
>
> It should be noted, Mr. Reynoso did NOT brandish a firearm or other such weapon. He did NOT stick a weapon in a person's face and demand valuables. He tried stealing food and driving away. No one was hurt. The loss was $84.00. That $84.00 food theft is a contributing reason he is facing 360 months to life.

*Id.* Consequently, his counsel asked the Court for a sentence below the sentencing guidelines.

On September 1, 2020, Mr. Reynoso was sentenced to a term of 280 months' imprisonment. (Cr. Doc. 116) (Judgment). Mr. Reynoso appealed his sentence arguing it was substantively unreasonable. *See Reynoso*, 2023 WL 4586142, at *5. The Tenth Circuit noted

13

that, generally, a below-guidelines sentence is presumptively reasonable, and Mr. Reynoso did "not demonstrate that the district court exceeded the bounds of permissible choice in imposing a sentence that [wa]s 80 months below the bottom of the applicable guidelines range." *Id.* These facts demonstrate that counsel's performance was not legally deficient as he did, in fact, challenge the effect the robbery charge could have on his overall sentence, which this Court rejected, and the Tenth Circuit agreed.

Further, as noted in the PSR, the aggravated robbery conviction was a state charge out of the 120th Judicial District Court in El Paso, Texas. "'[W]ith the sole exception of convictions obtained in violation of the right to counsel, a defendant has no right to . . . challenge [the validity of previous state convictions used to enhance his federal sentence] . . . in his federal sentencing proceeding.'" *United States v. Goode*, No. CR 03-2106 JB, 2010 WL 11523884, at *7 (D.N.M. May 26, 2010), *report and recommendation adopted*, No. CR 03-2106 JB, 2010 WL 11523885 (D.N.M. July 22, 2010) (quoting *Daniels v. United States*, 532 U.S. 374, 376 (2001)) (citing *Custis v. United States*, 511 U.S. 485, 487 (1994)). "An individual challenging his federal sentence through a § 2255 motion is similarly precluded from attacking the validity of his prior convictions." *Id*. Whether the state court classified his conduct as shoplifting or aggravated robbery was not an issue appropriate for his counsel to raise in his underlying federal trial for an unrelated criminal act. Therefore, Mr. Reynoso is unable to show that his counsel was ineffective for failing to challenge the charge of a prior state conviction because such an effort would have been unsuccessful, and Mr. Reynoso cannot show that counsel's alleged failure prejudiced him or detrimentally changed the result of his sentencing.

14

6. *Failure to Challenge the Search of his Phone*

Mr. Reynoso asserts his counsel was ineffective for failing to file a motion to suppress evidence retrieved from the search of his phone.   (Doc. 1) at 2.   He argues, "Federal officers violated the Wiretap Act when they searched his locked phone without a warrant, [o]nly to retrieve one two months after the phone was searched."  *Id.*

This claim fails because it is factually inaccurate.   As the Government points out in its' Response, the appellate record reflects that a proper search warrant was obtained.   The Government's brief on direct appeal states, "pursuant to a search warrant, agents downloaded text messages from [Mr. Reynoso's] seized cell phone."  *See* Brief for Respondent, *U.S. v. Reynoso*, No. 20-2130, 2021 WL 1085442, at *6 (10th Cir. Mar. 18, 2021).   Mr. Reynoso does not point to any evidence showing that his counsel knew or should have known that there was a warrantless search on his phone.   Because it is well established that the failure to make a frivolous or meritless argument cannot constitute ineffective assistance of counsel, Mr. Reynoso's counsel was not ineffective for failing to make the additional objections.  *See Orange*, 447 F.3d at 797.

Because Mr. Reynoso mentioned a potential violation of the Wiretap Act, the Court will also assume he is arguing that his trial counsel should have objected to any evidence obtained from telephone recordings between himself and others.   All recorded telephone conversations between Mr. Reynoso and the undercover agent as well as calls made and received in jail fall under the "prior consent" exception to the Wiretap Act, 18 U.S.C. § 2511(2)(c), which allows "a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception."   Further,

15

Mr. Reynoso's consent "can be implied from his decision to use the prison telephone despite adequate warnings that doing so would subject his communications to monitoring." *United States v. Verdin-Garcia*, 516 F.3d 884, 894 (10th Cir. 2008). Because raising a Wiretap Act violation would have been legally meritless, Mr. Reynoso has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance of counsel under *Strickland*.

### 7. *Failure to Challenge his Exclusion from a Pretrial Conference*

Mr. Reynoso claims "he was not allowed to attend the pretrial conference and was not at this point allowed to participate in his defense, where key issue[s] regarding the manner of the conduction of the trial were determined." (Doc. 1) at 2. He argues that the pretrial conference from which he was excluded "was not limited to issues as to matters of law, but was a determinative function with regard to substantive issues relating to the investigation and evidence[.]" *Id.* at 2-3.

Rule 43 of the Federal Rules of Criminal Procedure expressly indicates that the accused need not be present at "proceeding[s] involv[ing] only a conference or hearing on a question of law." Fed. R. Crim. P. 43 (b)(3). Indeed, many forms of pretrial conferences with counsel take place without clients present. Mr. Reynoso does not argue that due process was violated, only that his attorney was ineffective for excluding him from a pretrial conference. *See United States v. Gagnon*, 470 U.S. 522, 526 (1985) ("[A] defendant has a due process right to be present at a proceeding whenever his presence has a relation, reasonably substantial . . . to defend against the charge. The presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.") (internal quotation and

16

alterations omitted); *accord United States v. Santiago*, 977 F.2d 517, 522 (10th Cir. 1992). Likewise, the rights afforded by Rule 43 and due process can be waived with the consent of the accused. *See Gagnon*, 470 U.S. at 528-29; *United States v. Edmonson*, 962 F.2d 1535, 1543 (10th Cir. 1992) (citing *Diaz v. United States*, 223 U.S. 442, 445 (1912)); *Larson v. Tansy*, 911 F.2d 392, 396-97 (10th Cir. 1990).

Much like his previous claims, Mr. Reynoso provides no additional information, such as which pretrial conference he refers to, the date of the conference, and the substantive issues that were decided. It must be shown that the defendant's presence "would have been useful in ensuring a more reliable determination." *Kentucky v. Stincer*, 482 U.S. 730, 747 (1987). To the extent Mr. Reynoso is referring to the 17-minute pretrial conference held on July 8, 2019, the Pretrial Clerk's Minutes do not evidence and Mr. Reynoso does not point to any specific matters addressed that did not relate to questions of law. *See* (Cr. Doc. 87) (Pretrial Clerk's Minutes before the Honorable Robert C. Brack). *See also United States v. Gradsky*, 434 F.2d 880, 881-83 (5th Cir. 1970) (a defendant has no right to be present at pretrial proceedings when his presence would not aid his defense, the issue at the hearing was not one of guilt or innocence, and counsel was present); *Stein v. United States*, 313 F.2d 518, 522 (9th Cir. 1962) ("The Constitution does not assure 'the privilege of presence when presence would be useless, or the benefit but a shadow.'"). Absent specific facts to identify the hearing Mr. Reynoso was allegedly excluded from and how his presence would have aided in his defense, the Court need not accept his conclusory allegation and do not find deficient performance or prejudice.

B. *Evidentiary Hearing*

Courts shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b).   In other words, where the record for a Section 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required.   *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prisoner has failed even to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations").   For the reasons discussed above, the Court finds that the record is sufficient to dispose of each of Mr. Reynoso's allegations of ineffective assistance of counsel and his allegations do not warrant a hearing.

C. *Certificate of Appealability*

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A certificate of appealability requires "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   For the reasons explained above, the Court finds that reasonable jurists could not debate the denial of Mr. Reynoso's Section 2255 motion and, therefore, a certificate of appealability will be denied.

IT IS ORDERED:

1. Petitioner Mario Reynoso's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1; Cr. Doc. 147) is denied with prejudice.

2. A certificate of appealability is denied.

3. The Court will enter a separate judgment closing the civil habeas case.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.